RECEIVED

APR 2 3 2004

PAINE, HAMBLEN, COFFIN
BROOKE & MILLER

ORIGINAL

1    AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
2    by: Aaron H. Caplan
3    705 Second Avenue, Suite 300
     Seattle, WA 98103
4    (206) 624-2184
5
6    CENTER FOR JUSTICE
     by: David Blair-Loy
7    35 West Main Street, Suite 300
8    Spokane, WA 99201
     (509) 835-5211
9

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 2 8 2004

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

10           UNITED STATES DISTRICT COURT
11          EASTERN DISTRICT OF WASHINGTON
12

13   DONALD W. AUSDERAU and PEACE          No. CS-03-199-RHW
     AND JUSTICE ACTION LEAGUE OF
14   SPOKANE,                              **PRAECIPE**
15
16        Plaintiffs,
17
18             v.
19
20   SPOKANE TRANSIT AUTHORITY,
21        Defendant.
22
23

24        The parties inadvertently neglected to file the following attachments to

25   the Stipulation and Order of Dismissal entered April 7, 2004:  Settlement

26

PRAECIPE - 1

Agreement and STA Rules of Conduct adopted pursuant thereto. Through

counsel, the parties stipulate said documents may be filed by this praecipe.

Dated this 23rd day of April 2004.

AMERICAN CIVIL LIBERTIES              PAINE, HAMBLEN, COFFIN,
UNION OF WASHINGTON                   BROOKE & MILLER LLP

By: **telephonically approved**       By: _____
    Aaron H. Caplan                        David L. Broom
    WSBA #22525                            WSBA #2096

CENTER FOR JUSTICE                    Attorneys for Defendants

By: _____
    David Blair-Loy
    WSBA #27831

Attorneys for Plaintiff

PRAECIPE - 2

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

Donald W. Ausderau and Peace and Justice Action League of Spokane, made claims and thereafter commenced a lawsuit against Spokane Transit Authority (collectively "parties") in the United States District Court for the Eastern District of Washington as Cause No. CS-03-0199-RHW (the "lawsuit" or "litigation"), alleging violation of both federal and state civil rights, constitutional and other law; the Complaint and Answer in said litigation are hereby incorporated by reference; and the parties further recite:

WHEREAS, defendant Spokane Transit Authority's Answer denied the claims made in the complaint; and

WHEREAS, settlement of the litigation has now occurred in principle, and the parties desire to reflect said settlement in the form of this SETTLEMENT AGREEMENT AND MUTUAL RELEASE (Agreement).

NOW, therefore the parties agree as follows:

1. Spokane Transit Authority agrees to amend its Rules of Conduct to the form and language set out in said amended Rules of Conduct, a copy of which is attached hereto as an exhibit.

2. The Spokane Transit Authority agrees to pay to plaintiffs and their counsel attorney's fees in the amount of $4,750.00 in connection with that portion of plaintiffs' claim brought under 42 USC §1988 and related applicable law.

3. The parties state and acknowledge that this Agreement is for settlement of disputed claims, that the terms of settlement were negotiated, and that by entering into this Agreement neither party admits liability or applicability of defense, generally, or as set out in any provision of the Complaint and Answer in the litigation.

4. Donald W. Ausderau and Peace and Justice Action League of Spokane, as claimants/plaintiffs, and Spokane Transit Authority as defendant hereby mutually release the other from any and all claims or causes of action arising out of or related to (1) promulgation adoption, wording or administration of the STA Rules of Conduct; (2) other claims known or which should or could have been known as of the time of commencement of or date of answer in the litigation; and (3) any and all claims, allegations, causes of action made or set out, or which could have been so set out or alleged, in the lawsuit described above.

5.    This agreement is binding upon the undersigned, their agents, employees, affiliates, heirs, successors and assigns.

Dated this 15 March, 2004.

_Donald Ausderau_

Donald W. Ausderau

SUBSCRIBED & SWORN to me before this ___15th___ day of March, 2004.

_Elena KD Manley_

Print Name: _Elena KD Manley_
NOTARY PUBLIC in and for the State of _WA_
residing at _Spokane_
My Commission Expires: _1 Mar 07_

Dated this 15 March, 2004.

PEACE AND JUSTICE ACTION LEAGUE
    OF SPOKANE

By: _Rusty Nelson_
Its: _Authorized Steering committee member_

SUBSCRIBED & SWORN to me before this ___15th___ day of March, 2004.

_Elena KD Manley_

Print Name: _Elena KD Manley_
NOTARY PUBLIC in and for the State of _WA_
residing at _Spokane_
My Commission Expires: _1 Mar 07_



Dated this 25 March, 2004.

SPOKANE TRANSIT AUTHORITY

By: _Kim D. Zentz_

Its: _Chief Executive Officer_

SUBSCRIBED & SWORN to me before this __25th__ day of March, 2004.

_Geralyn M. Garberg_

Print Name: _Geralyn M. Garberg_

NOTARY PUBLIC in and for the State of __WA__

residing at __Spokane County__

My Commission Expires: __8/15/04__

**RULES OF CONDUCT
FOR TRANSIT VEHICLES, FACILITIES AND PROPERTIES**

**Adopted by the Board of Directors
SPOKANE TRANSIT AUTHORITY
1230 West Boone Avenue
Spokane, WA  99201**
February 25, 2004

(Rev. 02/25/04)

# TABLE OF CONTENTS

ARTICLE I -- INTRODUCTION.................................................................................. 1

ARTICLE II -- DEFINITIONS .................................................................................. 1

ARTICLE III -- REGULATION OF CONDUCT ................................................... 4

   A.   PROHIBITED CONDUCT.............................................................................. 4
   B.   ENFORCEMENT ............................................................................................ 6
     1.   Removal from STA Transit Vehicles, Facilities and Properties ............ 6
     2.   Exclusion from Service ....................................................................... 6
     3.   Other Laws not Limited ..................................................................... 8
   C.   LIABILITY ...................................................................................................... 8

ARTICLE IV -- PUBLIC COMMUNICATION ACTIVITIES: STA TRANSIT
VEHICLES, FACILITIES AND PROPERTIES ................................................... 8

   A.   PURPOSE AND SCOPE ............................................................................... 8
     1.   Non-Open Public Forums.................................................................... 8
     2.   STA's Legitimate Interests ................................................................. 9
     3.   Purpose of Article IV ........................................................................ 9
     4.   Facilities Governed by Article IV ..................................................... 9
   B.   REGULATION OF PUBLIC COMMUNICATION ACTIVITIES ...................... 9
     1.   Limitations ......................................................................................... 9
   C.   GENERAL ....................................................................................................... 11
     1.   Liability for Clean-up........................................................................ 11
     2.   Liability of STA ................................................................................. 11
     3.   Non-STA Uses .................................................................................... 11

ARTICLE V -- PUBLIC COMMMCATION ACTIVITIES: THE PLAZA .................... 11

   A.   INTRODUCTION............................................................................................ 11
     1.   Purpose of The Plaza......................................................................... 11
     2.   Purpose of Article V.......................................................................... 12
   B.   RULES AND PROCEDURES ......................................................................... 12
     1.   STA Intent.......................................................................................... 12
     2.   Public Communication Activities ...................................................... 12

ARTICLE VI -- STA SERVICE EXCLUSION POLICY ................................................ 18

APPENDIX 1 -- APPLICATION FOR A PERMIT TO ENGAGE IN PUBLIC
                COMMUNICATION ACTIVITIES ............................................. 20

APPENDIX 2 - PERMIT TO ENGAGE IN PUBLIC COMMUNICATION
                ACTIVITIES .................................................................................. 21

(Rev. 02/25/04)

APPENDIX 3 -- DIAGRAM OF AREAS IN THE STREET AND SKYWALK LEVELS
OF THE PLAZA DESIGNATED FOR PUBLIC
COMMUNICATION ACTIVITIES ............................................ 24

(Rev. 02/25/04)

## RULES OF CONDUCT FOR STA TRANSIT
## VEHICLES, FACILITIES AND PROPERTIES

### ARTICLE I -- INTRODUCTION

STA transit vehicles, facilities and properties are intended to provide public transportation services for the benefit of STA employees and the general public. To maintain public transportation services that are orderly, safe, secure, comfortable and convenient, the following Rules of Conduct for STA Transit Vehicles, Facilities and Properties (the "Rules of Conduct") have been adopted by the STA Board of Directors. The Rules of Conduct are intended to regulate conduct occurring on STA transit vehicles, within or upon STA facilities and properties, and in connection with STA's provision of public transportation services.

The Rules of Conduct consist of five separate articles, which include the following: Article I -- Introduction; Article II -- Definitions; Article III -Regulation of Conduct; Article IV -- Public Communication Activities: STA Transit Vehicles, Facilities and Properties; and Article V -- Public Communication Activities: The Plaza. Unless otherwise provided herein, reference to the phrase "Rules of Conduct" shall collectively include Articles I through V.

If any one or more of the provision(s) in the Rules of Conduct shall be declared by any court of competent jurisdiction to be contrary to law, then such provision(s) shall be null and void and shall be deemed separable from the remaining provisions in the Rules of Conduct and shall in no way affect the validity of the other provisions of the Rules of Conduct.

### ARTICLE II -- DEFINITIONS

As used in these Rules of Conduct, the words herein shall have the meanings provided in this Article II. Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Words imparting the singular number shall include the plural numbers and vice-versa, unless the context shall otherwise dictate.

**A.**     "Bus shelters" shall mean those structures located in transit vehicle loading zones that provide cover for the general public to board and deboard transit vehicles.

**B.**     "Commercial activity or activities" shall mean any enterprise or venture by groups or individuals for the purpose of promoting or selling products or services to STA employees or the general public, whether for profit or not.

**C.**     "General public" shall mean any person or group of persons, including STA employees not acting in an official capacity at the time.

**D.**     "Lower Level" shall mean the underground level of The Plaza where parking, paratransit boarding and deboarding zones and storage and maintenance areas are available. The Lower Level is not open for access/egress by the general public.

**E.**     "News racks" shall mean any stand, box, structure, rack, or other device which is designed and used for the sale of and/or distribution of newspapers, periodicals, magazines, or other publications or combinations of the same. The placement of news racks within or upon STA facilities and properties shall be the subject of a separate STA policy not reprinted here.

**F.**     "Park-and-ride lots" shall mean locations at which persons park their individual vehicles and transfer to an STA transit vehicle or car/vanpool vehicles, including all physical improvements and landscaping.

**G.**     "Permit shall mean a permit that gives a Permittee authority to conduct public communication activities in a manner consistent with applicable endorsements, rules and procedures in Article V herein.

**H.**     "Permittee" shall mean the holder/signatory of a Permit issued in accordance with the rules and procedures in Article V herein.

**I.**     "Person" shall mean any individual, firm, partnership, corporation, organization, association or entity of any kind.

**J.**     "Public communication activity or activities" shall mean the posting or distributing of flyers, pamphlets, brochures, books or other written material, collecting petition signatures, political campaigning, demonstrating, displaying signs, picketing, unscheduled playing of musical instruments or other performances, public speaking, conducting surveys, soliciting or receiving of funds or contributions of any kind for any purpose, or otherwise communicating or attempting to communicate to the general public.

**K.**     "Public transportation services" shall include the definition of public transportation services in RCW 36.57A.010(8), together with vanpools and fixed route and paratransit services, whether operated by STA or any governmental agency, private person, firm or corporation contracting with STA pursuant to chapter 36.57A. RCW

**L.**     "Rules of Conduct" shall mean the rules of conduct adopted by the Board of STA on May 24, 1995, and amended on November 1996, December 1997, July 2002, and February 2004, which regulate conduct occurring on STA transit vehicles, within or upon STA facilities and properties, and in connection with STA's provision of public transportation services. Unless otherwise provided herein, such definition shall include, collectively, Articles I through V.

**M.**     "Skywalk Level" shall mean the second floor of The Plaza, including any and all skywalk bridges connecting The Plaza to adjoining buildings. The Skywalk Level will be

(Rev. 02/25/04)

## ARTICLE III -- REGULATION OF CONDUCT

### A.  PROHIBITED CONDUCT

The following conduct is prohibited on STA transit vehicles, within or upon STA facilities and properties, and in connection with STA's provision of public transportation services:

**1.**  Except at a designated place, smoking or carrying a lighted or smoldering pipe, cigar, or cigarette;

**2.**  Discarding litter other than in designated receptacles; (RCW 9.91.025/SMC 10.10.100)

**3.**  Playing any radio, recorder, or other sound-producing equipment, except that nothing herein shall prohibit the use of such equipment when connected to earphones that limit the sound to individual listeners or the use of communication devices by STA employees, STA contractors or public safety officers in the line of duty, or the use of private communication devices used to summon or notify individuals (e.g., "beepers" or portable telephones);

**4.**  Spitting, urinating or defecating; (RCW 9.91.025/SMC 10.10.100)

**5.**  Carrying any flammable liquid, explosive, acid, or other article or material likely to cause harm to others except that nothing herein shall prevent a person from carrying a cigarette, cigar, or pipe lighter or carrying a firearm or ammunition in a way that is not otherwise prohibited by law; (RCW 9.91.025/SMC 10.10.100)

**6.**  Intentionally obstructing or impeding the flow of STA transit vehicles or passenger traffic, hindering or preventing access 'to STA transit vehicles, facilities and properties, or otherwise unlawfully interfering with the provision or use of public transportation services; (RCW 9.91.025/SMC 10.10.100)

**7.**  Disturbing others by engaging in loud, raucous, unruly, harmful, or harassing behavior; (RCW 9.91.025/SMC 10.10.100)

**8.**  Destroying, defacing, or otherwise damaging property of STA; (RCW 9.91.025/SMC 10.10.100)

**9.**  Carrying any alcoholic beverages or controlled substances, unless otherwise authorized by law;

**10.**  Carrying, exhibiting, displaying, or drawing any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and

(Rev. 02/25/04)

place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons, unless otherwise authorized by law (RCW 9.41.240);

**11.**     Allowing any animal to run at large, to unreasonably disturb others, or interfere with transit-related activities;

**12.**     Rollerskating, rollerblading or skateboarding; (SMC 16.61.787)

**13.**     Riding bicycles, unicycles, mopeds and motorcycles, except where vehicle travel and access is permitted; (SMC 16.61.787)

**14.**     Eating or drinking on STA transit vehicles or in prohibited areas of STA facilities and properties;

**15.**     Using a public address system, loudspeaker or other sound amplifying device, except as authorized by STA or its designee;

**16.**     Sleeping, camping or storing personal property on benches and floors on or within STA transit vehicles or STA facilities and properties, unless otherwise authorized by law;

**17.**     Entering or remaining upon any nonpublic areas of STA facilities and properties, including, but not limited to, staging areas, work areas and equipment rooms, except when authorized by STA or its designee;

**18.**     Engaging in commercial activities, except as such activities are authorized by STA or its designee in a written permit, license, concession contract, lease or other written authorization;

**19.**     Engaging in public communication activities, except as such activities are authorized by Articles IV and V herein;

**20.**     Engaging in any civic, cultural and other special event, not included in the definitions of commercial or public communication activities in Article II herein, except as such activities are authorized by STA or its designee in a written permit, license, concession contract, lease or other written authorization;

**21.**     Committing any act which tends to create or incite, or creates or incites, an immediate breach of peace, including, but not limited to (a) fighting, (b) racing, (c) obscene language and noisy or boisterous conduct tending to cause a breach of the peace, and (d) personally abusive epithets, or words or language of an offensive, disgusting or insulting nature, which epithets, words or language when addressed to the ordinary citizen are, as a matter of common knowledge, inherently likely to provoke a violent reaction of fear, anger or apprehension;

(Rev. 02/25/04)

**22.**     Using of STA transit vehicles, facilities and properties for nontransit-related activities, except as authorized by STA in Articles IV and V herein;

**23.**     Entering STA transit vehicles, facilities and properties when lacking the ability, because of illness or intoxication, to care for one's self;

**24.**     Refusing to allow proper securement of a wheelchair on STA transit vehicles;

**25.**     Refusing to use appropriate personal restraints on an STA transit vehicle providing paratransit services;

**26.**     Missing scheduled paratransit trips by not showing and/or failing to cancel three consecutive trips (regardless of the time span between trips) or six trips within any six month period; provided that, trips missed for reasons beyond his or her control shall not be a basis for determining that such a pattern or practice exists;

**27.**     Violating an exclusion order issued pursuant to B.2 of Article III herein; (RCW 9A.52.070/080) and

**28.**     Violating any federal, state, or municipal civil and criminal laws.

**B.     ENFORCEMENT**

**1.     Removal from STA Transit Vehicles, Facilities and Properties.**

Any person engaging in prohibited conduct under the provisions of Article III may be refused entrance upon or ordered to leave STA transit vehicles, facilities and properties by a commissioned law enforcement official, STA personnel as authorized by the Chief Executive Officer of STA, or authorized personnel of a contracted service provider in accordance with the terms of the applicable service contract. Failure to immediately comply with such a removal order may be grounds for prosecution for criminal trespass and/or unlawful bus conduct.

**2.     Exclusion from Service.**

*(a)     Basis for Exclusion.* Engaging in prohibited conduct under Article III shall be cause for excluding a person from the privilege of entering and using all or any part of STA transit vehicles, facilities and properties for a period of time not to exceed one year.

*(b)     Notice Procedure.* The STA Superintendent of Transportation, or his/her designee, shall give written notice, by personal delivery or by mailing a copy, addressed to the person's last known address, by certified U.S. mail, to any person to be excluded from STA transit vehicles, facilities and properties. The notice shall specify the reason for exclusion, places and duration of the exclusion, the effective date of the exclusion, the

(Rev. 02/25/04)

appeal process, and provide the person an opportunity to respond in person, by telephone or in writing, to the proposed action within five (5) calendar days of actual or constructive receipt of the notice by the person being excluded. The exclusions shall commence on the sixth calendar day after actual or constructive receipt of the notice by the person being excluded, unless the person has timely responded to the notice, in which case the STA Superintendent of Transportation, or his/her designee, shall reconsider the exclusion and shall render a written decision determining whether exclusion is warranted. If the STA Superintendent of Transportation, or his/her designee, determines that exclusion is warranted, such exclusion shall commence and be effective upon actual or constructive receipt of the written decision by the person to be excluded.

*(c)*    ***Constructive Notice.*** Receipt of a notice is construed to have been accomplished if the person knew or reasonably should have known from the circumstances that he/she is excluded from STA transit vehicles, facilities and properties. Receipt of a notice is also presumed to have been accomplished three (3) calendar days after the notice has been placed in the U.S. mail.

*(d)*    ***Immediate Refusal or Removal.*** The notice procedure described in Article III, Section B 2(b), (c) above may be waived, if, in STA's discretion, immediate conditions exist that pose safety or security risks, interfere with or impinge on the rights of others, impede the free flow of the general public, impede the orderly and efficient use of STA transit vehicles, facilities and properties, or otherwise interfere with STA's transit related activities. In such immediate conditions, persons engaging in prohibited conduct under the provisions of Article III may be immediately reseated, refused transportation, or removed from STA transit vehicles, facilities and properties. The provisions of this Article III, Section B 2(d) shall not apply to persons utilizing STA's paratransit services.

*(e)*    ***Length of Exclusion.*** The following guidelines shall be used in determining the duration of a particular exclusion for engaging in prohibited conduct under the provisions of Article III. The actual exclusion period imposed may be shorter or longer depending on the circumstances of each case.

| | |
|---|---|
| First Offense: | 30-90 days |
| Second Offense: | 91-180 days |
| Third Offense: | 181-365 days |
| Each Subsequent Offense: | 365 days |

*(f)*    ***Appeal Procedure.*** Not later than ten (10) calendar days after commencement of the exclusion, an excluded person may appeal in writing to the STA Director of Operations, or his/her designee, for de novo review of the exclusion. The appellant may request a hearing or may request review without a hearing based on a written statement setting forth the reasons why the exclusion is invalid or improper. If the excluded person is unable to respond in written format, STA will make reasonable accommodation to allow due process.

(Rev. 02/25/04)

*(g)*     *Hearing.* The STA Director of Operations, or his/her designee, shall, unless a hearing is requested, render a written decision within ten (10) calendar days after receipt of the appeal. If a hearing is requested, the hearing shall be held within thirty (30) calendar days after receipt of the appeal, and a written decision shall be rendered within ten (10) calendar days after the hearing. Exclusions shall not be stayed during the appeal process, unless the exclusion is for missing scheduled trips under Article III, Section A., 26 herein. If an appellant requires public transportation services to attend the hearing, the appellant shall contact STA five (5) calendar days prior to the hearing date, and STA shall make arrangements to provide the necessary public transportation services for the appellant.

*(h)*     *Refusal to Comply.* The refusal to immediately comply with an order to exclude a person from STA transit vehicles, facilities and properties shall be grounds for prosecution for criminal trespass.

### 3.     Other Laws not Limited.

The enforcement of Article III herein is not intended to limit, in any manner, the enforcement of any applicable federal, state or municipal laws.

## C.     LIABILITY

Nothing in Article III herein shall create a duty to any person on the part of STA or form any basis for liability on the part of STA, its officers, agents or employees. The obligation to comply with Article III is solely that of any person entering and using STA transit vehicles, facilities and properties and STA's enforcement of Article III is discretionary not mandatory.

## ARTICLE IV -- PUBLIC COMMUNICATION ACTIVITIES: STA TRANSIT VEHICLES, FACILITIES AND PROPERTIES

## A.     PURPOSE AND SCOPE

### 1.     Non-Open Public Forums.

As a provider of public transportation services, STA makes a variety of transit vehicles, facilities and properties available to persons who use such public transportation services. Although these transit vehicles, facilities and properties may be accessed by the general public, they are not open public forums either by nature or by designation. They are intended to be used solely for transit-related activities and provide little, if any, space for other nontransit-related activities.

(Rev. 02/25/04)

## 2. STA's Legitimate Interests.

Most public communication activities are prohibited on STA transit vehicles and within or upon STA facilities and properties, regardless of viewpoint expressed, because they are incompatible with STA's legitimate interests, including but not limited to:

*(a)* securing the use of scarce parking spaces and shelter space for persons who are using public transportation services;

*(b)* maintaining safe, clean and secure transit vehicles, facilities and properties to retain existing, and attract new, users of public transportation services;

*(c)* reducing litter pick-up and other maintenance or administrative expenses so as to maximize the provision of public transportation services; and

*(d)* preventing delays and inconvenience to the general public by minimizing congestion, and expediting their boarding, transferring, and deboarding of STA transit vehicles.

## 3. Purpose of Article IV.

STA's intent and desire is to allow members of the general public to engage in public communication activities on STA transit vehicles and within or upon STA facilities and properties to the extent such activities are compatible with STA's legitimate proprietary functions and interests, but expressly does not hereby designate its transit vehicles, facilities and properties as public forums. It is the purpose of Article IV to describe the limited extent to which the general public is allowed to engage in public communication activities on STA transit vehicles and within or upon STA facilities and properties. Article IV does not apply to STA employees engaged in authorized activities in the course of their employment.

## 4. Facilities Governed by Article IV.

STA transit vehicles, facilities and properties, as defined herein, except the Plaza, are governed by Article IV. The Plaza is governed by Article V herein.

## B. REGULATION OF PUBLIC COMMUNICATION ACTIVITIES

### 1. Limitations.

Public communication activities which are otherwise lawful are permitted on STA transit vehicles and within or upon STA facilities and properties, subject to the following exceptions and limitations:

*(a)* Posting or affixing flyers, pamphlets, brochures, leaflets, written or graphic material of any kind is prohibited.

(Rev. 02/25/04)

*(b)*     Selling or offering for sale or donation books, pamphlets, or any other written or printed material is prohibited.

*(c)*     Soliciting funds is prohibited; provided that solicitation for donations for non-profit causes may be permitted within designated areas, and are otherwise subject to the Rules of Conduct and law applicable to such fundraising.

*(d)*     Signs, banners, structures or other paraphernalia may not be affixed to or erected on STA transit vehicles and within or upon STA facilities and properties, except as authorized by STA or law.

*(e)*     Signs carried by or on a person are permitted provided the signs are not constructed of a size or material which could inadvertently or intentionally cause injury to a person or property, except signs are not permitted on STA transit vehicles. Signs may not be of a size that obstructs the free flow of the general public and may not exceed 32 inches by 32 inches. A "Sandwich board" sign may not extend beyond the carrier's shoulders or, if used by a Permittee, beyond the permitted area.

*(f)*     Public communication activities will not be permitted in parking areas or roadways. Public communication activities may not block any loading zone, signage, stairway, escalator, elevator, customer service counter, ticket or automatic teller machine, authorized commercial activity, any fire safety system component, telephone, information board or the normal general public paths to and from such areas.

*(g)*     Public communication activities otherwise permitted under Article IV are prohibited if the number of persons engaged in the activities, their location or their manner of conducting the activities is found to create safety or security problems; interfere with the free flow of persons onto STA transit vehicles, or into, within or from STA facilities and properties; or interfere with the operation of such transit vehicles, facilities and properties, or STA's provision of public transportation services.

*(h)*     Persons engaged in public communication activities within or upon STA facilities and properties shall not use any parking spaces provided at such facilities and properties unless they are also using STA's public transportation services.

*(i)*     Persons engaging in public communication activities described in subsection (1) below, under Article IV, may so without obtaining a Permit in accordance with the rules and procedures set forth in Article V herein.

(1)  Activities not involving signs, boxes, receptacles, easels or other similar apparatus of any kind; provided that STA personnel may require that such activity not be conducted within ten feet of persons in sidewalk queue lines, bus exits or permanent waiting fixtures unless invited closer by a transit patron.

(Rev. 02/25/04)

(2)    Otherwise, a permit will be required for public communications activities as otherwise provided herein.

## C.    GENERAL

### 1.    Liability for Clean-up.

Any person engaged in public communication activities and found responsible for litter, damages or destruction of property, whether by accident or intent, shall be responsible for the clean-up and/or liable for the cost of repairing or replacing the property.

### 2.    Liability of STA.

Nothing in Article IV or in the permission of public communication activities on STA transit vehicles and within or upon STA facilities and properties shall create a duty to any person on the part of STA or form any basis for liability on the part of STA, the members of the Board, its agents or employees. The obligation to comply with the requirements of Article IV is solely that of any persons engaging in public communication activities and STA's enforcement of Article IV is discretionary, not mandatory.

### 3.    Non-STA Uses.

Notwithstanding the limitations and prohibitions contained in Article IV, STA reserves the right to enter into leases or other use agreements permitting non-STA uses of STA transit vehicles, facilities and properties that are found to be compatible with STA's proprietary functions and interests.

## ARTICLE V -- PUBLIC COMMUNICATION ACTIVITIES: THE PLAZA

## A.    INTRODUCTION

### 1.    Purpose of The Plaza.

The Plaza, including, but not limited to, the Lower Level, Street Level and Skywalk Level, is first and foremost intended for STA public transportation services and the use of those services by the general public. Safe and efficient movement of STA transit vehicles and customers within and upon The Plaza is paramount to achieving safety, security, maintenance and operation objectives and meeting general public expectations concerning The Plaza and STA's provision of public transportation services. Selected areas of The Plaza can accommodate public communication activities unrelated to the provision of public transportation services. Public communication activities can be reasonably accommodated during hours of The Plaza operation, others only after hours of operation, while some may not be able to be accommodated at all. To the extent public

(Rev. 02/25/04)

communication activities can be accommodated at The Plaza, the rules and procedures stated herein shall apply.

### 2.    Purpose of Article V.

Although primarily intended for persons making use of public transportation services, many of the areas of The Plaza are fully open to the general public as there are no restrictions placed on who is permitted access during normal hours of operation.

The public areas of The Plaza include the Street and Skywalk Levels. With respect to these public areas, STA is (within reasonable limits) authorized to regulate the time, place, and manner in which persons conduct themselves. The "content" of that activity is not at issue. Article V addresses only the time, place and manner in which persons conduct themselves.

Without regard to content, individuals or groups involved, some activities might be denied altogether or made subject to the Rules of Conduct. Such activities would include, but are not necessarily limited to, those that are inconsistent with the intended purpose of a given area, pose safety or security risks, interfere with or impinge on the rights of others, impede the free flow of the general public, affect the orderly and efficient use of The Plaza, or otherwise interfere with STA's public transportation services, operations and maintenance activities. Article V sets forth policies, rules and procedures governing the use of The Plaza for public communication activities.

Accordingly, the express purpose of Article V is to accommodate freedom of expression and the operational function of The Plaza. Article V should be construed and interpreted to achieve that end.

## B.    RULES AND PROCEDURES

### 1.    STA Intent.

It is the intent of STA to accommodate, to the extent practicable, public communication activities that are not associated with the purposes for which The Plaza was intended. While attempting to accommodate such activities, STA must extend some control over them to achieve the goals and objectives described above. Accordingly, persons will be allowed to engage in public communication activities within The Plaza, provided such activities are conducted in accordance with the following rules and procedures, as applicable, and are not in violation of the Rules of Conduct and existing laws.

### 2.    Public Communication Activities.

*(a)    Permit.* Persons engaging in public communication activities described in subsection (1) below, under Article V may do so without obtaining a Permit in accordance with the rules and procedures set forth in this Article V.

(Rev. 02/25/04)

(1)     Activities not involving signs, boxes, receptacles, easels or other similar apparatus of any kind; provided that STA personnel may require that such activity not be conducted within ten feet of persons in sidewalk queue lines, bus exits or permanent waiting fixtures unless invited closer by a transit patron.

(2)     Otherwise, a permit will be required for public communications activities as otherwise provided herein.

**(b)     *Application for Permit.*** Any person that desires to obtain a Permit shall submit an application ("Application") to STA's Director of Operations or his/her designee. A copy of the form of the Application is attached hereto as Appendix "1" and by this reference is incorporated herein. Applications may be obtained in-person, Monday - Friday (except holidays), 8:00 a.m. to 5:00 p.m., from STA's Business Office, 1230 W. Boone Ave., Spokane, WA 99201, or The Plaza Bus Shop, 701 W. Riverside Ave., Spokane, WA 99201.

**(c)     *Issuance of Permit.***

(1)     Within a period of no longer than two (2) calendar days of receipt of a completed Application, a Permit shall be issued by STA's Director of Operations or his/her designee, or the applicant shall be furnished a written statement setting forth the reason why the Application for a Permit has been denied. A Permit will not be issued more than seven (7) calendar days prior to the commencement of intended use and will be valid only for the specific dates, times and designated areas identified on the Permit. A Permit shall be effective for a period of no longer than seven (7) calendar days and will be limited to the normal hours and days that the designated areas identified on the Permit is open for public access. No Permit shall be issued for more than five (5) hours in each seven (7) calendar days for any individual or group. Applications shall be processed in the order of their receipt.

(2)     A Permit may be renewed prior to its expiration for up to seven (7) additional calendar days by filing with STA's Director of Operations or his/her designee, a notice that the Permittee intends to continue his/her activity, together with any amendments necessary to keep the information required by the Application current and accurate. A Permit shall not be renewed if the notice and information herein required are not timely filed or if the continued presence of the Permittee cannot be accommodated under the rules and procedures in this Article V.

(3)     Permittees will be required to have the Permit on their person (or with group) when engaged in their activity. A copy of the form of the Permit is attached hereto as Appendix "2" and by this reference is incorporated herein.

**(d)     *Areas of Permit Exercise.*** Permitted public communication activities, as defined in Article II herein, are permitted in certain designated places in the Street and

(Rev. 02/25/04)



Skywalk Levels of The Plaza, which are shaded and identified on Appendix "3" attached hereto and by this reference incorporated herein.

*(e)*   ***Denial of Permit.***  If a Permit is denied, STA's Director of Operations or his/her designee, shall serve on the applicant personally or by certified mail, return receipt requested, a written statement of reasons for denial. A Permit shall not be denied unless:

(1)   The applicant has not furnished the information required by the Application, or has failed to agree to the conditions of the Permit;

(2)   Person applying for the permit is subject to: (i) an exclusion order issued to the applicant or participant pursuant to Article III herein; (ii) a revocation of a previous permit issued to the applicant; or (iii) a failure to comply with the terms and conditions of a permit previously issued to the applicant;

(3)   The nature of the activity that the applicant wishes to conduct constitutes a commercial activity and is subject to other requirements of STA as described in Article III herein;

(4)   Emergency conditions exist that make the applicant's proposed activity at the date, time and location proposed by the applicant incompatible with the operational function of the Plaza; or

(5)   More applicants than herein provided for have requested permitted activities for the same date, time and location and the applicant is not entitled to priority in accordance with the rules and procedures in this Article V.

(6)   Where feasible, the Director or his/her designee may propose measures for curing any defect in the application for a permit.

*(f)*   ***Revocation of Permit.***  A Permit shall be revoked immediately by STA's Director of Operations or his/her designee, when evidence exists that:

(1)   A Permittee has violated the provisions of the Rules of Conduct, has been duly warned of the violation at least once, but has not complied; or

(2)   The activity has attracted a crowd of sufficient size so as to begin to adversely impact the safety, security or rights of others, the free flow of the general public, or the normal operation requirements of The Plaza. Under this circumstance, the Permit may be returned for use if the crowd disperses and the adverse conditions that existed at the time of revocation are no longer present.

*(g)*   ***Notice of Revocation.***

(Rev. 02/25/04)

(1)     Notice of revocation shall be in writing supported by a statement of facts and a list of witnesses to the facts stated, and the notice shall be personally served upon the Permittee or mailed to the Permittee by certified mail, return receipt requested. A notice of revocation need not be in writing, if immediate conditions exist that pose safety or security risks, interfere with or impinge on the rights of others, impede the free flow of the general public, affect the orderly and efficient use of The Plaza, or otherwise interfere with STA's public transportation services, operations and maintenance activities. If written notice of revocation is not given because of such immediate conditions, the STA Director of Operations or his/her designee, shall within one (1) calendar day from the date of revocation prepare a written notice of revocation as required above.

(2)     Once a Permit has been revoked, a person shall not continue their activity until another Permit has been obtained or the revoked Permit returned. If the Permit has been revoked on a permanent basis, all materials involved in the terminated activity must be removed immediately, by the individual(s) involved.

### (h)     Appeal from Denial or Revocation.

(1)     Upon notification of the denial of a Permit, or revocation thereof, an applicant or Permittee shall file with STA's Chief Executive Officer a notice of appeal.

(2)     Upon receipt of the notice of appeal, the matter shall be set for a hearing before STA's Chief Executive Officer within ten (10) calendar days thereof and shall issue a notice of hearing which shall be sent by certified mail, return receipt requested, to the applicant or Permittee, and which shall contain the date, time and place of the hearing.

(3)     At the hearing, the applicant or Permittee may be represented by legal counsel. Testimony shall be taken upon oath or affirmation first of witnesses in support of the denial or revocation of the Permit. The applicant or Permittee may testify and present witnesses on his behalf. A record shall be made of the proceeding and kept on file with STA.

(4)     The findings and order of STA's Chief Executive Officer  shall, within seven (7) calendar days of the conclusion of the hearing, be forthwith sent to the applicant or Permittee by certified mail, return receipt requested.

(5)     An applicant denied a Permit may immediately appeal the order of STA's Chief Executive Officer to any court with jurisdiction. Filing an appeal stays the order of STA's Chief Executive Officer until a final judicial decision has been rendered. A denied applicant, who desires to file an appeal, shall have seven (7) calendar days from the date the applicant receives the order to file such appeal before the order becomes final.

### (i)     Availability of and Limit Upon Permits.

(Rev. 02/25/04)

(1)    Permits will be issued on a first-come, first-served basis, subject to availability.    If more persons are requesting issuance of Permits than can be accommodated for the area, date and time requested, STA's Director of Operations shall give preference to the applicant or applicants who have had the least opportunity during the preceding thirty (30) calendar days to conduct public communication activities. Permits shall be issued without regard to the identity of the person or cause for which the Permit is being requested

(2)    For safety and security reasons, to ensure that the free flow of the general public and the intended transportation functions of The Plaza are met, and to accommodate other activities competing for the limited available space, a maximum of four (4) individuals, representing the same groups or causes, will be allowed to engage in public communication activities at each of the designated areas in the Street or Skywalk Levels of The Plaza, at any given time.

(j)    **Table Endorsement.** Persons requesting a Permit to engage in public communication activities may, at their option, indicate a desire to use tables and chairs to store, display, and distribute materials in conjunction with their activity.    Permits requiring the use of a table or other furniture will be annotated by a "Table Endorsement." Subject to the availability of space, no more than two (2) tables will be permitted at each designated area in the Street or Skywalk Levels. Tables may only be used in accordance with the following conditions:

(1)    The Table Endorsement applies to the public communication activities held within The Plaza.

(2)    Only tables/chairs supplied by STA are permissible. STA provides tables/chairs for a charge based on commercial rental of similar equipment in Spokane. The table/chairs will be set up and dismantled by STA staff. A table must be attended at all times, unless the Permittee is physically present within the area and can maintain sight of the table at all times.

(3)    Materials must be stored on top of or beneath each table. Under no circumstances may the table, chair, stored articles or person(s) staffing the table obstruct the free flow of persons moving within or through The Plaza.

(4)    Signs, leaflets or other materials may be affixed to the table. No signs, leaflets or other materials may be posted to or erected within The Plaza unless space has otherwise been provided for such use.

(5)    STA will not be held responsible for damage to or loss of any materials under or upon the table.

(k)    **Transferability.** Upon written approval by STA's Director of Operations, a Permit may be transferred to another person engaged in the same activity; provided the

(Rev: 02/25/04)

receiving party complies with the conditions of the Permit and retains it on his/her person during the activity.

(*l*)    ***Reproduction.*** Permits may not be reproduced or altered in any manner. Reproduced or altered Permits will be considered invalid and confiscated. The holder of the invalid Permit will be required to cease their activity until a valid Permit is obtained.

(*m*) ***Signs, Banners, Literature, Etc.*** Signs, banners, literature, leaflets, posters, structures or other paraphernalia may not be affixed to The Plaza or any property in The Plaza or erected in conjunction with an activity, unless space has otherwise been provided for such purpose at The Plaza or under provisions stated elsewhere in Article V. Signs carried by or on a person are permitted provided the signs are not constructed of materials which could inadvertently or intentionally cause injury to another individual. Signs must not be of a size that obstructs the free flow of the general public (e.g., a maximum of 32 inches by 32 inches or a "sandwich board" worn by an individual which does not extend beyond the carrier's shoulders is acceptable). Permittees may offer literature to the general public, but shall refrain from attempting to distribute literature to any member of the general public who indicates he or she does not desire to receive said literature.

(*n*)    ***Responsibility for Clean-up.*** The Permittee shall be responsible for cleaning up litter that they personally (or as a group) generate in the course of their activity. If, at the end of the Permittee's activity, the Permittee fails to clean up such litter, STA shall cause the clean up of the Permittee's litter and the Permittee shall reimburse STA for all costs incurred therefor.

(*o*)    ***Unattended Distribution and Storage of Materials.*** No Permittee shall leave unattended distribution or storage of materials, placards, boxes, or other supplies used in support of public communication activities.

(*p*)    ***Liability for Damaging Property.*** Any person or organization engaged in public communication activities and found responsible for damaging, injuring, or destroying STA property within or upon The Plaza, whether by accident or intent, shall be liable for the cost of replacing and/or repairing such property.

(*q*)    ***Hold Harmless.*** Any Permittee, including Permittee's personal representatives, successors in interest, and assigns, shall, as a precondition to the issuance of the Permit, agree to indemnify, defend and hold harmless STA, and its officers, agents and employees from all suits, claims, actions and damages of whatsoever kind or nature arising out of or resulting from the Permittee's use of the premises, except to the extent caused by the negligence of STA and its officers, agents and employees. Permittee shall further covenant and agree to specifically assume potential liability for actions brought by Permittee's own employees against STA and its officers, agents and employees and, for that purpose only, Permittee specifically waives any immunity under workers' compensation act, Title 51 RCW; provided, however, that said waiver shall not apply to such actions in which Permittee's employee alleges that the claim arises through the fault

(Rev. 02/25/04)

of STA and its officers, agents and employees and through no fault of Permittee, unless the fault of Permittee is established through discovery or at trial.

(r) *Interaction with the General Public.* STA and its officers, agents and employees, shall not unnecessarily interfere with any consensual conversation between Permittees and members of the general public. Permittees shall forthwith terminate any conversation with any member of the general public when requested to do so by the addressee. No person, while engaged in public communication activities, shall physically touch or contact a member of the general public, unless the person has previously consented to the contact or unless the person has previously agreed to contribute to the Permittee or the organization which he represents.

(s) *Misrepresentations.* No person, while engaging in solicitation of funds, shall misrepresent the true purposes for which the resources thus obtained will be utilized by the person. In the solicitation of funds, the person shall inform the person being solicited of the true intent of the organization for which said funds are solicited. No false, fraudulent, or misleading statements or representations shall be made.

(t) *Permits and Licenses.* The Permittee shall be responsible for obtaining all necessary permits and licenses from any other regulatory agencies required for the Permittee's use of The Plaza. Permittee shall provide copies of said permits to STA upon its request.

(u) *Compliance with the Rules of Conduct and Laws.* Permittees shall abide by the Rules of Conduct and all state, federal and municipal criminal and civil laws applicable to them.

**ARTICLE VI**
**STA SERVICE EXCLUSION POLICY**

## A.    POLICY ON ENFORCEMENT OF COURT ORDERS

1.    Except as provided in STA's Code of Conduct (immediate threat), STA employees shall not refuse service to anyone who has not been formally excluded from STA service pursuant to the application of STA's Rules of Conduct or a court order.

2.    Except as provided in STA's code of Conduct (immediate threat), STA employees shall not assist a patron in enforcing a court order prohibiting or restricting contact in or at an STA vehicle or facility other than to notify appropriate law enforcement personnel via STA's dispatcher.

3.    If an STA employee feels threatened by assault, reckless endangerment, coercion, burglary, criminal trespass, malicious mischief, kidnapping, unlawful imprisonment, rape, residential burglary, or stalking, which the employee encounters on the job, or other conduct prohibited by court order, or the employee feels that a transit patron is being similarly threatened, the employee should attempt to remove himself or

(Rev. 02/25/04)

herself and any passengers, if necessary, from the threatening situation. The employee shall immediately inform an STA supervisor or security person of the situation and complete an appropriate incident report on the same day. If the conduct constitutes criminal conduct, the employee should report the incident to the appropriate jurisdictional law enforcement agency and to their dispatcher or immediate supervisor. An incident report also is required to be filed on the same day.

**4.** If an STA employee feels threatened or is the subject of conduct outside her/her employment that constitutes a violation of the various statutes that authorize court orders as set forth herein and wishes to obtain an order which would prohibit or restrict a person from using STA's vehicles or facilities, the employee, when possible, shall notify his or her supervisor or a human resources officer in advance of seeking a court order to determine if STA's Rules of Conduct should be applied to prohibit the patron from utilizing STA's services and to evaluate the need for protection of its employees and patrons. When a supervisor receives notice of a proposed court order affecting STA's workplace, the supervisor will notify the Risk Manager who shall coordinate the appropriate response of STA and the Superintendent of Transportation.

**5.** Although STA may support or pursue an employee's request for a court order, employees shall not seek or obtain a court order in STA's name or represent to the court that he or she is seeking a court order on STA's behalf without the Chief Executive Officer's approval. Employees should be advised that STA, as a municipal corporation, cannot obtain a court order for itself as an institution.

**6.** This policy shall not prevent STA employees from seeking court orders protecting them from persons who have violated laws which authorize persons to obtain court orders.

**7.** In determining how STA will respond to a court order affecting STA's employees, STA will evaluate the nature and extent of the prohibited conduct and its affect on STA employees, vehicles, or facilities. This evaluation will be done on a case-by-case basis.

**8.** Any STA employee who obtains or is the subject of a court order which affects the use of STA's vehicles and facilities, shall advise his or her supervisor promptly of the order and its application to the employee and provide a conformed copy of the original on file with the issuing court. The supervisor shall arrange for immediate distribution to the Superintendent of Transportation and the Risk Manager. Failure to report the existence of such a court order, or attempting to enforce the court order, other than through the jurisdictional law enforcement agency or the approval of STA, may result in discipline, up to and including termination.

(Rev. 02/25/04)

## APPENDIX 1

## APPLICATION FOR A PERMIT TO ENGAGE IN PUBLIC COMMUNICATION ACTIVITIES

1.    Please state the applicant's name, address and telephone number:

_____

_____
_____
_____
_____

2.    Please state the name, address and telephone number of the person that is sponsoring, promoting or organizing the activity, if any: _____

_____
_____
_____

3.    Does the applicant desire to use tables and chairs? _____.

4.    Please state the location (i.e., the designated areas of Street or Skywalk Levels of The Plaza), date, time and duration of the activity that the applicant wishes to conduct: _____

_____
_____

5.    Please describe any props (without reference to content that the applicant intends to display (e.g., size or dimensions, etc.). _____

_____
_____

6.    The applicant has read and agrees to abide by the Rules of Conduct and all state, federal and municipal criminal and civil laws applicable to them.

DATED this _____ day of _____, 20____.

_____
as applicant

By:_____
Title: _____

- 20 -                                    (Rev. 02/25/04)

## APPENDIX 2

## PERMIT TO ENGAGE IN PUBLIC COMMUNICATION ACTIVITIES

The Spokane Transit Authority ("STA"), 1230 W. Boone Ave., Spokane, WA 99201, hereby authorizes _____ (the "Permittee"), to engage in public communication activities in The Plaza under the terms and conditions set forth herein. The Permittee recognizes and agrees that this Permit is issued for the Permittee's sole benefit and convenience. STA assumes no responsibility for the care or custody of equipment, materials, supplies or any other furniture to be used on STA property nor does STA agree to provide an alternative facility if for any reason the premises should cease to continue to be available. This Permit is subject to the following conditions, and by accepting this Permit the Permittee thereby has accepted each such conditions:

1.     *Authorized Areas.*     [insert description of the designated areas of the Street or Skywalk Levels of The Plaza, and include a map of said area] With the exception of activities described at Rules of Conduct, Article IV.B.1.(i) and Article V.B.2.(a), public communication activities are entirely prohibited in all other areas of The Plaza.

2.     *Participants.*   [insert identity of the person who is sponsoring, promoting, or organizing the activity]

3.     *Term.* The days and hours of use are limited to [insert date and time and duration of activity]. This Permit shall be effective for a period of [insert period of time].

4.     *Retention of Permit.* The Permittee is required to have this Permit on their person (or with group) when engaged in their activity.

5.     *Reproduction or Alteration.* This Permit may not be reproduced or altered in any manner. Reproduced or altered permits will be considered invalid and confiscated. The holder of the invalid permit will be required to cease their activity until a valid permit is obtained.

6.     *Responsibility for Clean-up.* All persons or groups issued this Permit shall be responsible for cleaning up litter that they personally (or as a group) generate in the course of their activity. If, at the end of the Permittee's activity, the Permittee fails to clean up such litter, STA shall cause the clean up of the Permittee's litter and the Permittee shall reimburse STA for all costs incurred therefor.

7.     *Liability for Damaging Property.* Any person or organization engaged in public communication activities and found responsible for damaging, injuring, or destroying STA property within or upon The Plaza, whether by accident or intent, shall be liable for the cost of replacing and/or repairing such property.

(Rev. 02/25/04)

*8. Table Endorsement.* The Permittee is authorized to use ____ table(s) to store, display, and distribute materials in conjunction with their activity. A table must be attended at all times unless the Permittee is physically present within the area and can maintain sight of the table at all times. Materials must be stored on top of or beneath each table. Signs, leaflets or other materials may be affixed to the table.

*9. Signs, Banners, Literature, Etc.* Signs, banners, literature, leaflets, posters, structures or other paraphernalia may not be affixed to The Plaza or any property in The Plaza or erected in conjunction with an activity, unless space has otherwise been provided for such purpose at The Plaza or under provisions stated elsewhere in the Rules of Conduct. Signs carried by or on a person are permitted provided the signs are not constructed of materials which could inadvertently or intentionally cause injury to another individual. Signs must not be of a size that obstructs the free flow of the general public (e.g., a maximum of 32 inches by 32 inches or a "sandwich board" worn by an individual which does not extend beyond the carrier's shoulders is acceptable). Permittees may offer literature to the general public, but shall refrain from attempting to distribute literature to any member of the general public who indicates he or she does not desire to receive said literature.

*10. Hold Harmless.* The Permittee, including Permittee's personal representatives, successors in interest, and assigns, hereby agrees to indemnify, defend and hold harmless STA, and its officers, agents and employees from all suits, claims, actions and damages of whatsoever kind or nature arising out of or resulting from the Permittee's use of the premises, except to the extent caused by the negligence of STA and its officers, agents and employees. Permittee further agrees to specifically assume potential liability for actions brought by Permittee's own employees against STA and its officers, agents and employees and, for that purpose only, Permittee specifically waives any immunity under workers' compensation act, Title 51 RCW; provided, however, that said waiver shall not apply to such actions in which Permittee's employee alleges that the claim arises through the fault of STA and its officers, agents and employees and through no fault of Permittee, unless the fault of Permittee is established through discovery or at trial.

*11. Interaction with the General Public.* STA and its officers, agents and employees, shall not unnecessarily interfere with any consensual conversation between Permittees and members of the general public. Permittees shall forthwith terminate any conversation with any member of the general public when requested to do so by the addressee. No person, while engaged in public communication activities, shall physically touch or contact a member of the general public, unless the person has previously consented to the contact or unless the person has previously agreed to contribute to the Permittee or the organization which he represents.

*12. Misrepresentations.* No person, while engaging in solicitation of funds, shall misrepresent the true purposes for which the resources thus obtained will be utilized by the person.    In the solicitation of funds, the person shall inform the person being

solicited of the true intent of the organization for which said funds are solicited. No false, fraudulent, or misleading statements or representations shall be made.

**13. Permits and Licenses.**     The Permittee shall be responsible for obtaining all necessary permits and licenses from any other regulatory agencies required for the Permittee's use of The Plaza. Permittee shall provide copies of said permits to STA upon its request.

**14. Compliance with the Rules of Conduct and Laws.**  Permittees shall abide by the Rules of Conduct and all state, federal and municipal criminal and civil laws applicable to them.

DATED this _____ day of _____, 20_____.

SPOKANE TRANSIT AUTHORITY

By:_____
Title:_____

_____
as Permittee

By:_____
Title:_____

- 23 -                              (Rev. 02/25/04)

# APPENDIX 3

## DIAGRAM OF AREAS IN THE STREET AND SKYWALK LEVELS OF THE PLAZA DESIGNATED FOR PUBLIC COMMUNICATION ACTIVITIES

I:\Spodocs\30977\00010\agree\00176689.DOC:drs

(Rev. 02/25/04)